**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ZHANLING JIANG,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 06-73470

Agency No.
A095-446-775

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 15, 2010—Pasadena, California

Filed September 26, 2011

Before: Harry Pregerson, Kenneth F. Ripple,* and
Susan P. Graber, Circuit Judges.

Opinion by Judge Pregerson

---

*The Honorable Kenneth F. Ripple, Senior Circuit Judge for the United
States Court of Appeal for the Seventh Circuit, sitting by designation.

18435

**COUNSEL**

Daliah Setareh, Michael Ortiz, Yunie K. Hong, and Joann Lee, Legal Aid Foundation of Los Angeles, Los Angeles, California, for the petitioner.

Stuart S. Nickum, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

PREGERSON, Circuit Judge:

Zhanling Jiang, a native and citizen of China, petitions for review of the Board of Immigration Appeals' (BIA) decision denying his applications for adjustment of status, asylum, withholding of removal, and protection under the Convention Against Torture. Jiang also appeals both the immigration judge's (IJ) denial of his motion for a continuance and the BIA's denial of his motion to remand to the IJ for reconsider-

ation of his application for adjustment of status. We grant the petition as to Jiang's adjustment of status application and remand to the BIA for further proceedings.

## I.

Substantial evidence does not support the IJ's finding, and the BIA's conclusion, that Jiang was married and thus ineligible for adjustment of status as the unmarried son of a United States citizen. *See Zhao v. Mukasey*, 540 F.3d 1027, 1029 (9th Cir. 2008). Jiang submitted two documents that were issued in China to establish that he was single: an "Affidavit of Single" issued by the China Family Planning Commission, and a notarial certificate indicating that there was no record of a marriage registration for Jiang found in the Marriage Registration Authority of Jiang's domicile. The IJ refused to accept those documents because they were not authenticated by consular certification through a United States consulate in China, in accordance with 8 C.F.R. § 287.6. The IJ also prohibited Jiang from authenticating the documents through his own testimony.

[1] But "[d]ocuments may be authenticated in immigration proceedings through any recognized procedure, such as those required by INS regulations or by the Federal Rules of Civil Procedure. The procedure specified in 8 C.F.R. § 287.6 provides one, but not the exclusive method." *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (per curiam) (internal quotation marks and citations omitted). Thus, the IJ erred by refusing to allow Jiang to authenticate the foreign documents through his own testimony. *See Vatyan v. Mukasey*, 508 F.3d 1179, 1183 (9th Cir. 2007) (holding that the IJ must consider a petitioner's testimony as evidence that is relevant to the issue of a document's authenticity). And the IJ also erred by refusing to accept as evidence the attestation in the Notarial Certificate without consular certification, in violation of Federal Rule of Civil Procedure 44(a)(2)(C)(ii) (permitting the

lack of a foreign record "to be evidenced by an attested summary with or without a final certification").

**[2]** The documents that Jiang offered as proof of his unmarried status, had they been accepted into evidence, would have demonstrated that Jiang is the unmarried son of a United States citizen and is, therefore, eligible for adjustment of status. *See* 8 U.S.C. §§ 1255(a), 1153(a)(1). Thus, substantial evidence does not support the IJ's finding to the contrary.

## II.

The IJ also abused her discretion by denying Jiang's motion for a continuance, and the BIA erred in upholding the denial. *See Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009). We weigh four factors to determine whether the BIA has abused its discretion in denying a continuance: 1) the importance of the evidence, 2) the unreasonableness of the immigrant's conduct, 3) the inconvenience to the court, and 4) the number of continuances previously granted. *Cui v. Mukasey*, 538 F.3d 1289, 1292 (9th Cir. 2008) (citing *Baires v. INS*, 856 F.2d 89, 92-93 (9th Cir. 1988)).

**[3]** Jiang was not given adequate notice before the merits hearing that the IJ would require authentication of the foreign documents through a United States consulate in China. The BIA mischaracterized the facts when it asserted that Jiang's counsel had nearly five months' notice that authentication would be required and that Jiang had made no effort to authenticate the documents. At the October 14, 2004 hearing, the only instruction from the IJ to Jiang's counsel in regard to proving Jiang's unmarried status was "to have him make a declaration or something." Following that instruction, Jiang acquired the Affidavit of Single and presented it to the IJ at the next hearing on December 9, 2004.

The government first objected to the authenticity of the Affidavit of Single at the December 9, 2004 hearing.

Although Jiang's counsel believed authentication was not necessary because the same document had been accepted at Jiang's brother's adjustment hearing without authentication, Jiang's counsel offered to authenticate the Affidavit of Single through Chinese authorities. The IJ did not disapprove of this method of authentication but rather stated, "I think you should make an attempt at least." Jiang's counsel did so, first by attempting to authenticate the document through the Chinese embassy in the United States, and then through the Chinese authorities in China, who subsequently issued the Notarial Certificate. It was only on the day of the merits hearing on March 8, 2005, that the IJ indicated that she would only accept into evidence documents with United States consular certification. Jiang then requested a continuance so that he could authenticate the foreign documents through the United States consulate in China. The IJ denied Jiang's request.

**[4]** While Jiang should have been permitted to authenticate the documents through means other than United States consular certification, *see Vatyan*, 508 F.3d at 1183, Jiang received no notice until the merits hearing that the IJ would not accept authentication by any others means. Thus, Jiang's request for a short continuance was not unreasonable. *See Cui*, 538 F.3d at 1293.

The fact that Jiang was able to obtain consular authentication less than one month after the merits hearing shows that the immigration court would not have been greatly inconvenienced by a continuance. *See id.* at 1292 ("a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the immigrant's statutory rights merely an empty formality") (internal quotation marks omitted). Nor is there any indication in the record that the government opposed Jiang's request for a continuance. And though several continuances were previously granted in Jiang's case, only one of which was explicitly requested by Jiang, we have found that "the interest in administrative efficiency cannot justify the pretermission of [the petitioner's] claims where the

other factors we have addressed . . . all militate strongly in [the petitioner's] favor." *Karapetyan v. Mukasey*, 543 F.3d 1118, 1132 (9th Cir. 2008), *superseded by statute on other grounds as stated in Owino v. Holder*, 575 F.3d 956, 958 (9th Cir. 2009) (per curiam).

**[5]** There is no evidence more critical to Jiang's adjustment of status claim than the documents from the Chinese government, which state that he is unmarried according to Chinese law. The authenticated foreign documents conclusively establish Jiang's legal status as unmarried, making him statutorily eligible for adjustment of status as the unmarried son of a United States citizen. *See* 8 U.S.C. §§ 1255(a), 1153(a)(1).

\* \* \*

**[6]** Jiang is statutorily eligible for adjustment of status as the unmarried son of a United States citizen. We therefore grant Jiang's petition for review and remand to the BIA for it to exercise its discretion over Jiang's adjustment of status application. 8 U.S.C. §§ 1255(a); *see INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). Because we remand for the BIA to reconsider Jiang's adjustment of status application, we do not reach Jiang's claims for asylum, withholding of removal, and protection under the Convention Against Torture. We also need not address Jiang's due process claims or the denial of Jiang's motion to remand.

**PETITION GRANTED and REMANDED.**